## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>G&D CONSTRUCTION GROUP, INC. and METCON, INC.<br><br>Defendants | Case No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Auto-Owners Insurance Company ("Auto-Owners"), files this Complaint for Declaratory Judgment and shows the Court as follows:

### *Nature of Action*

1.     This case is an action for declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Auto-Owners and the Defendants, i.e., that Auto-Owners owes no insurance coverage obligations, including without limitation the obligations to defend or indemnify, to G&D Construction Group, Inc.

("G&D"), and no obligations to Metcon, Inc., in connection with the claims asserted by it in the lawsuit styled *Metcon, Inc. v. G&D Construction Group, Inc.*, in the Superior Court of Gwinnett County, State of Georgia, Civil Action No. 21-A-00102-3 ("Underlying Lawsuit").

## *Parties*

2.    Auto-Owners is a Michigan corporation with its principal place of business in Lansing, Michigan.

3.    Defendant G&D is a Georgia corporation with a principal place of business located in Lawrenceville, Gwinnett County, Georgia. G&D may be served through its registered agent, George Puha, at 1582 Azalea Dr., Lawrenceville, GA 30043.

4.    Defendant Metcon is a North Carolina corporation with a principal place of business located in Tucker, Fulton County, Georgia. Metcon may be served through its registered agent, Glenn C. Stanford, 305 Buckhead Avenue, NE, Atlanta, GA 30305.

## *Jurisdiction and Venue*

5.    This declaratory judgment action involves Auto-Owners' rights and duties pursuant to an insurance policy issued to G&D made in Gwinnett County, Georgia.

6.     This action involves Auto-Owners' rights and duties with respect to an insurance policy issued in this District, regarding a party domiciled in this district, and involving a lawsuit filed in a State of Georgia court located within this District.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because one of the parties is located in this District, the insurance policy was issued in this district, and a substantial part of the events giving rise to Auto-Owner's declaratory judgment claim took place and are currently taking place in this District.

8.     D&G is subject to personal jurisdiction and venue in this Court.

9.     Metcon is subject to personal jurisdiction and venue in this Court as it entered into contracts in Georgia related to this dispute and submitted itself to Georgia jurisdiction by filing the Underlying Lawsuit in this District.

10.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

11.     Plaintiff is a citizen of a different state than all Defendants.

12.     The amount in controversy, exclusive of interest and costs, exceeds $75,000.

13.    This Court also has jurisdiction pursuant to 28 U.S.C. § 2201, in that Auto-Owners is seeking a declaration from this Court regarding the parties' rights and obligations with respect potential coverage under an insurance policy issued by Auto-Owners.

### The Facts Giving Rise to Metcon's Claim against G&D

14.    NP 301, LLC ("NP 301"), a Georgia limited liability company with a principal place of business in Atlanta, Georgia, hired Metcon to act as general contractor for the construction of a Spring Hill Suites Hotel in Lumberton, North Carolina (the "project").

15.    The general contractor contract between Metcon and NP 301 was dated December 27, 2013.

16.    Metcon hired G&D to perform certain exterior insulation finishing system ("EIFS") construction work.

17.    On May 28, 2020, NP 301 brought suit against Metcon in the Superior Court of Fulton County, civil action no. 2020CV336620 ("NP 301 Lawsuit").

18.    A true and exact copy of the NP 301 Lawsuit Complaint (without exhibits) is attached hereto and labeled Exhibit 1.

19.     In the NP 301 Lawsuit Complaint, NP 301 alleges that at some unspecified time prior to September 11, 2016, water intrusion was observed at various locations within the hotel. (*Complaint For Damages And Breach of Contract*, Ex. 1, ¶ 8.)

20.     As a result of the water intrusion, NP 301 alleges that Metcon attempted to remedy the issues, and then obtained a "Maintenance Bond" ("Bond") to resolve any construction defects, with a three-year period from September 11, 2016. (*Complaint For Damages And Breach of Contract*, Ex. 1, ¶ 9.)

21.     After the project was completed on or about September 11, 2016, NP 301 alleged that, among other things, the EIFS was improperly installed on the project, resulting in water intrusion to the building. (*Complaint For Damages And Breach of Contract*, Ex. 1, ¶ 10.)

22.     NP 301 Lawsuit Complaint alleges that the water intrusion issues arise out of a problem with the exterior EIFS. (*Complaint For Damages And Breach of Contract*, Ex. 1, ¶ 10.)

23.     NP 301 has made demand for payment to Metcon and the sureties. (*Complaint For Damages And Breach of Contract*, Ex. 1, ¶11.)

24.     NP 301 made claims for breach of contract against Metcon related to the construction work in the NP 301 Lawsuit. (*Complaint For Damages And Breach of Contract*, Ex. 1, Count One.)

25.     NP 301 has alleged $2,204,725.68 in property damage and remediation, plus claims for lost income and litigation expenses, in the NP 301 Lawsuit Complaint. (*Complaint For Damages And Breach of Contract*, Ex. 1, ¶ 21.)

26.     The NP 301 Lawsuit has been stayed and submitted to arbitration.

27.     Metcon contends that it has made demands upon G&D to submit to arbitration, but G&D has not responded.

### *The Underlying Lawsuit by Metcon v. G&D*

28.     Metcon filed the Underlying Lawsuit in Gwinnett County, Georgia on January 7, 2021.

29.     A true and accurate copy of the Underlying Lawsuit Complaint is attached hereto as Exhibit 2.

30.     Metcon contends that G&D contracted with Metcon to perform EIFS work on the project. (*Complaint*, Ex. 2, ¶ 8.)

31.     Metcon contends that the after the project was completed, NP 301 alleged that EIFS was improperly installed on the project, resulting in water intrusion to the building. (*Complaint*, Ex. 2, ¶¶ 10-11.)

32.     Metcon contends that NP 301 also alleges that water intrusion caused damages to portions of the project that were outside of the scope of Defendant G&D's work, such as sheathing, framing, drywall, and other building components. (*Complaint*, Ex. 2, ¶ 11.)

33.     Metcon asserts claims against G&D for breach of written contract, including but not necessarily limited to the following alleged breaches:

(a) if NP 301's claims are valid, then G&D breached the construction contract by providing inadequate construction work;

(b) G&D failure to participate in arbitration is a breach of the arbitration provision of the contract;

(c) G&D breached the obligation to maintain specified liability insurance and name Metcon as an additional insured; and

(d) failing to defend and indemnify Metcon in the NP 301 Lawsuit.

(*Complaint*, Ex. 2, Count One, ¶¶ 14-28.)

34.    Metcon asserts a claim against G&D for breach of warranties concerning the EIFS work performed on the project. (*Complaint*, Ex. 2, Count Two, ¶¶ 30-32.)

35.    Metcon asserts a claim for negligence against G&D concerning the EIFS work performed on the project. (*Complaint*, Ex. 2, Count Three, ¶¶ 34-39.)

36.    Metcon asserts a claim for common law and contractual indemnity against G&D that seeks a defense and indemnity relating to the NP 301 Lawsuit. (*Complaint*, Ex. 2, Count Four ¶¶ 41-44.)

37.    Metcon asserts a claim for breach of implied contract against G&D concerning the EIFS work performed on the project. (*Complaint*, Ex. 2, Count Five ¶¶ 46-52.)

38.    The Underlying Lawsuit Complaint seeks actual damages, litigation expenses, and an order to send Metcon to arbitration related to the NP 301 Lawsuit, among other remedies. (*Complaint*, Ex. 2, Prayer for Relief, pp. 11-12.)

39.    G&D did not provide notice to Auto-Owners of the Underlying Lawsuit.

40.     Auto-Owners received notice of the Underlying Lawsuit from counsel for Metcon.

41.     Auto-Owners fully reserved it rights under the CGL policies in writing via correspondence dated February 11, 2021.

42.     A copy of the February 11, 2021 reservation of rights letter for the CGL Policies is attached hereto as Exhibit 3.

43.     In the CGL reservation of rights letter, Auto-Owners agreed to defend and is defending G&D in the Underlying Lawsuit.

44.     Auto-Owners fully reserved its rights under its Umbrella Policy in writing via correspondence dated February 12, 2021.

45.     A copy of the February 12, 2021 reservation of rights letter for the Umbrella Policy is attached hereto as Exhibit 4.

*The Auto-Owners' Policies*

46.     Auto-Owners issued a Commercial General Liability Coverage policy, policy number 102318-48518416-13, to G&D Construction Group, Inc. for the effective date period of 08/16/2013 to 08/16/2014 ("13-14 CGL Policy"). The 13-14 CGL Policy had policy limits of $1,000,000 per occurrence and $2,000,000 general aggregate.

47.     A true and accurate copy of the 13-14 CGL Policy is attached hereto as Exhibit 5.

48.     The 13-14 CGL Policy was renewed, with policy number 102318-80518416-14, for the effective date beginning 08/16/14, but that policy was cancelled effective 12/16/2014 ("14 CGL Policy"). The 14 CGL Policy had policy limits of $1,000,000 per occurrence and $2,000,000 general aggregate.

49.     A true and accurate copy of the 14 CGL Policy is attached hereto as Exhibit 6.

50.     The relevant provisions of the 13-14 CGL Policy and the 14 CGL Policy were identical for purposes of this action. Thus, when provisions of these two polices are referenced, they will be collectively referred to as the "CGL Policies."

51.     Auto-Owners issued a Commercial Umbrella Liability Coverage policy, policy number 102318-48518416-13, to G&D Construction Group, Inc. for the effective date period of 08/16/2013 to the Policy's cancellation date of 08/16/2014 ("Umbrella Policy").

52.     A true and accurate copy of the Umbrella Policy is attached hereto as Exhibit 7.

53.     Although Auto-Owners was prepared to renew the Umbrella Policy, the renewed Umbrella Policy was cancelled from inception and voided ab initio due to non-payment by G&D.

54.     The insuring agreement of the CGL Policies stated, in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B** .

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed

11

insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

d.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

\* \* \*

. . .

55.    The CGL Policies included the following Coverage A exclusions:

**2.  Exclusions**

This insurance does not apply to:

\* \* \*

**b.  Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   **(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

**(2)** That the insured would have in the absence of the contract or agreement.

*   *   *

**j.   Damage to Property**

"Property damage" to:

*   *   *

(7)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

*   *   *

Paragraph **(7)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

*   *   *

**l.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

**m.   Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*   *   *

56.   The CGL Policies contained the following conditions:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

*   *   *

13

**2.   Duties In The Event of Occurrence, Offense, Claim Or Suit**

   **a.**  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" or offense took place;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.**  If any claim is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of any claim or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

     You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

   **c.**  You and any other involved insured must:

      **(1)** Immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit";

      **(2)** Authorize us to obtain records and other information;

      **(3)** Cooperate with us in the investigation or settlement of any claim or defense of any "suit"; and

      **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**[BY ENDORSEMENT]**

Paragraphs **a.** and **b.** of this condition will not serve to deny any claim for failure to provide us with notice as soon as practicable after an "occurrence" or an offense which may result in a claim:

**a.**   If the notice of a new claim is given to your "employee"; and

**b.**   That "employee" fails to provide us with notice as soon as practicable.

This exception shall not apply:

**a.**   To you; or

**b.**   To any officer, director, partner, risk manager or insurance manager of yours.

\* \* \*

57.   The CGL Policies included the following definitions:

**SECTION V – DEFINITIONS**

\* \* \*

**9.**   "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.**   It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

      **b.**   You have failed to fulfill the terms of a contract or agreement

if such property can be restored to use by:

    **a.**   The repair, replacement, adjustment or removal of "your product" or "your work"; or

      **b.**   Your fulfilling the terms of the contract or agreement.

\* \* \*

**14.**  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**17.**  "Products-completed operations hazard":

15

    **a.**  Includes all "bodily injury" and "property damage" occurring away from premises you
own or rent and arising out of "your product" or "your work" except:

       **(1)**  Products that are still in your physical possession; or

       **(2)**  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

          **(a)**  When all of the work called for in your contract has been completed.

          **(b)**  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

          **(c)**  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

       Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.**  Does not include "bodily injury" or "property damage" arising out of:

       **(1)**  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

       **(2)**  The existence of tools, uninstalled equipment or abandoned or unused materials; or

       **(3)**  Products or operations for which the classification, shown in the Declarations, states that products-completed operations are included.

**18.**  "Property damage" means:

    **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

*   *   *

**27.**  "Your work":

16

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** The providing of or failure to provide warnings or instructions.

* * *

58.    The CGL Policies contained the following endorsement:

**[By Endorsement]**

**GEORGIA EXTERIOR FINISHING SYSTEM EXCLUSION – FORM A**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Under **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY, 2. Exclusions**, the following exclusion is added:

**Exterior Finishing System**

This insurance does not apply to any claim, "suit", action or proceeding for "bodily injury", "property damage", "personal injury" or "advertising injury" which is in any way related to or arising out of any "exterior finishing system" application.

This exclusion does not apply to any claim, "suit", action or proceeding for "bodily injury" which occurred before completion of "your work".

"Your work" is deemed completed:

    **1.** When all of the work called for in your contract has been completed.

    **2.** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

17

**3.** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**B.** The following definitions are added to **SECTION V – DEFINITIONS**:

"Exterior finishing system", is an exterior insulating and finishing system applied to the exterior of a structure which incorporates any synthetic stucco or material similar in substance or purpose, and which may also include: insulating board or other material; adhesive or mechanical fasteners; and the application of flashings, coatings, caulking or sealants.

59.    The CGL Policies include the following terms:

**SECTION II – WHO IS AN INSURED**

1.      If you are designated in the Declarations as:
   a.   An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
   b.   A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.
   c.   A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
   d.   An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
   e.   A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

60.    The CGL Policies includes the following endorsement:

**GEORGIA LIMITED FUNGI OR BACTERIA COVERAGE**

This Endorsement modifies insurance provided under the following:

Fungi and Bacteria Property Damage Aggregate Limit: $50,000

A.  The following additional exclusions is added to **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAAMGE LIABILITY 2. Exclusions**:

18

"Bodily injury" arising out of:

a. A "fungi or bacteria incident"; or
b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

\*          \*          \*

**C.**   Coverage provided by this insurance for "property damage" arising out of a "fungi or bacteria incident" is subject to the Fungi and Bacteria Property damage Aggregate Limit as described in Paragraph D. of this endorsement.

**D.**   The following are added to **SECTION III – LIMITS OF INSURANCE**
1. Subject to Paragraphs 2 and 3 of Section III – Limits of Insurance, as applicable, the Fungi and Bacteria Property Damage Aggregate Limit shown in the Schedule of this endorsement is the most we will pay under Cvoerage A for all "property damage" arising out of one or more "fungi or bacteria incident."

**E.**   The following additional definitions are added to SECTION V – DEFINITIONS

"Fungi" means any type or form of fungus, including but not limited to mold, mildew, mycotoxins, spores, scents or byproducts produced or released by any type or form of fungus.

"Fungi or bacteria incident" means an incident which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of , ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria, on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such damage.

61.    The Umbrella Policy contained the following insuring agreement:

**COVERAGE**

**A.**   **We** will pay those sums included in **ultimate net loss** that the **insured** becomes legally obligated to pay as damages because of:

1. **Bodily injury;**

2. **Property damage;**

3. **Personal inury;** or

4. **Advertising injury**

19

to which this insurance applies caused by an **incident**.

**B.** If the basis of coverage for an **incident** is:

    **1.** An occurrence:

        **a.** The **bodily injury** and **property damage** must take place during the policy term[.]

*   *   *

62.    The Umbrella Policy contained the following definitions:

**DEFINITIONS**

To understand this policy, **you** must understand what **we** mean when **we** use these words and phrases. They appear in bold-faced print in this section and wherever used in the policy.

*   *   *

**H.** **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

    **1.** It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous: or

    **2.** **You** have failed to fulfill the terms of a contract or agreement

if such property can be restored to use by:

    **1.** The repair. replacement. adjustment or removal of **your product** or **your work**; or

    **2.** **Your** fulfilling the terms of the contract or agreement.

**I.** **Incident** means either an occurrence or an offense, whichever is the basis of coverage, then:

    **1.** When coverage applies on an occurrence basis, **incident** means an accident with respect to:

*   *   *

    **b.** **property damage**

20

including continuous or repeated exposure to substantially the same general harmful conditions. Continuous or repeated exposure to substantially the same general harmful conditions constitutes one **incident**.

\* \* \*

**K.  Insured Contract**

    **1.  Insured contract** means:

\* \* \*

        **h.**  That part of any other contract or agreement pertaining to **your** business (including indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the **tort liability** of another to pay damages because of **bodily injury** or **property damage** to a third person or organization.

\* \* \*

**O.  Products-completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises you own or rent and arising out of **your product** or **your work** except:

    **1.**  Products that are still in **your** physical possession; or

    **2.**  Work that has not yet been completed or abandoned. However, **your work** will be deemed completed at the earliest of the following times:

        **a.**  When all of the work called for in **your** contract has been completed.

        **b.**  When all of the work to be done at the job site has been completed, if **your** contract calls for work at more than one job site.

        **c.**  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

\* \* \*

**P.  Property damage** means:

    **1.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss shall be deemed to occur at the time of the physical

injury that caused the loss of use.

2. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the incident that caused the loss of use.

\* \* \*

V. **Tort liability** means a liability that would be imposed by law in the absence of any contract or agreement.

\* \* \*

Y. **Ultimate net loss** means the sum actually payable by **us** to procure settlement or satisfaction of the **insured's** legal obligation for damages either by:

1. Final adjudication; or

2. Compromise with **our** written consent.

However, **ultimate net loss** shall not include salaries of the **insured's** employees or those of an **underlying insurer** or expenses incurred by the **insured**, **underlying insurer** or **us** in investigation, adjustment or litigation.

\* \* \*

FF. **Your work** means:

1. Work or operations performed by **you** or on **your** behalf; and

2. Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of any of the items included in **1.** or **2.** immediately above.

**Your work** also includes the providing of or failure to provide warnings or instructions relative to any of the items included in **1.** or **2.** immediately above.

\* \* \*

63.    The Umbrella Policy contained the following conditions:

**CONDITIONS**

This policy is subject to the following conditions:

* * *

**F.   Legal Action Against Us**

**We** may not be sued unless:

**1.**   There is full compliance with all the terms of this policy: and

**2.**   Until the obligation of an **insured** to pay is finally determined either by:

    **a.**   Judgment against the **insured** after actual trial: or

    **b.**   By written agreement of the **insured**, the claimant and **us**.

No one shall have any right to make **us** a party to a **suit** to determine the liability of an **insured**.

* * *

**H.   Notice of Incident, Claim or Suit**

**1.**   When an **incident** likely to involve **us** takes place, the **insured** must notify **us** in writing as soon as practicable, of any **incident**, claim or suit. Notice of an **incident** is not notice of a claim.

    The notice must give:

    **a.**   **Your** name and policy number;

    **b.**   The time, place and circumstances of the **incident**; and

    **c.**   The names and addresses of injured persons and witnesses.

    The **insured** shall promptly take at his or her expense all reasonable steps to prevent other **bodily injury, property damage, personal injury** or **advertising injury** from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

**2.**   If claim is made or **suit** is brought, **we** must be advised promptly. All papers in connection with claims or **suits** must be sent to **us** without delay.

**3.**   The **insured** must:

    **a.**   Immediately send **us** copies of any correspondence, demands, notices, summonses or papers in connection with any claim or **suit**;

    **b.**   Authorize **us** to obtain records and other information;

23

    **c.**   Cooperate with **us** in the investigation or settlement of any claim or defense of any **suit**; and

    **d.**   Assist **us**, upon **our** request. in the enforcement of any right against any person or organization which may be liable to the **insured** because of injury or damage to which this insurance may also apply.

The **insured** must attend hearings and trials and assist in securing and giving evidence and the obtaining and attendance of witnesses. The **insured** must not. except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense.

64.    The Umbrella Policy contained the following exclusions:

**EXCLUSIONS**

This policy does not apply to:

*   *   *

**B.**   Damages claimed for any loss, cost or expense incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    **1.**   **Your product;**

    **2.**   **Your work;** or

    **3.**   **Impaired property**

    if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

*   *   *

**Q.**   **Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **1.**   Assumed in a contract or agreement that is an **insured contract**, provided such **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does not apply to the liability of the **insured**, it also does not apply to such liability assumed by the **insured** under an **insured contract**; or

    **2.**   That the **insured** would have in the absence of the contract or agreement.

24

\* \* \*

**Y.  Property damage** to:

\* \* \*

    **6.**  That particular part of real property on which any **insured** or any contractor or subcontractor working directly or indirectly on **your** behalf are performing operations, if **property damage** arises out of those operations; or

    **7.**  That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

    This exclusion does not apply with respect to:

\* \* \*

    **c.**  **Y.7.** to **property damage** included in the **products-completed operations hazard**.

\* \* \*

**AA.**    **Property damage** to **your work** arising out of it or any part of it and included in  the products-completed operations hazard.

**BB.**    **Property damage** to **impaired property** or property that has not been physically injured, arising out of:

    **1.**  A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**;

    **2.**  A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

    This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

\* \* \*

25

65.     The Umbrella Policy contained the following endorsement:

**CONTRACTOR'S EXCLUSION**
**Commercial Umbrella Policy**

It is agreed:

\*   \*   \*

**B.**  The following exclusions are added to the **EXCLUSIONS** section of the policy:

    **1.**  **Bodily injury**, **property damage** or **personal injury** assumed by the **insured** under an **insured contract**.…

\*   \*   \*

    **3.**  **Bodily injury** or **property damage** arising out of the **products-completed operations hazard**.…

\*   \*   \*

66.     The Umbrella Policy contained the following endorsement:

67.     The Umbrella Policy contained the following endorsement:

**PERSONS AND ORGANIZATIONS INSURED**

Each of the following is an **insured** under this policy to the extent described below:

\*   \*   \*

**H.**  Any person, organization, trustee or estate with respect to which **you** are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to operations by or on behalf of, or to facilities of or used by, **you**.

68.    The Umbrella Policy contained the following endorsement:

**EXCLUSION OF FUNGI OR BACTERIA**
**Commercial Umbrella Policy**

It is agreed:

**A.**  The following definition is added to the **DEFINITIONS** section of the policy:

   **Fungi** means any form or type of fungus, including, but not limited to, any mildew, mold, spores, mycotoxins, scents or byproducts released or produced by any type or form of fungus.

**B.**  The following exclusions are added to the **EXCLUSIONS** section of the policy:

   **1.**  **Bodily injury, property damage, personal injury** or **advertising injury** arising out of, in part or in whole, the actual, threatened or alleged ingestion of, inhalation of. exposure to, contact with, presence of. or existence of, any **fungi** or bacteria, whether airborne or not, within or on a structure or building, including its contents. This exclusion applies whether any other event, cause, product or material contributed in any sequence or concurrently to such damage or injury. This exclusion shall not apply to any **fungi** or bacteria that are contained in. or are on, a product or good intended for human consumption.

   **2.**  Any loss, expenses or cost arising out of the monitoring, testing for, abating, removing, cleaning up, containing, neutralizing, detoxifying, treating, disposing of or remediating, or in any way assessing the effects of, or responding to, **fungi** or bacteria, by any **insured** or by any other entity, person or governmental authority. This exclusion shall not apply to any **fungi** or bacteria that are contained in, or are on, a product or good intended for human consumption.

All other policy terms and conditions apply.

\* \* \*

# DECLARATORY JUDGMENT
# AUTO-OWNERS HAS NO DUTY
# TO DEFEND OR INDEMNIFY G&D

69.    The Auto-Owners Policies do not cover any of the claims made or

damages, related to the events alleged in the Underlying Complaint, because the

allegations of the Underlying Complaints do not allege occurrences as required for Coverage A as the property damage alleged did not occur during the policy periods of the CGL and Umbrella Policies.

70.    The Auto-Owners Policies do not cover any of the claims made or damages related to the events alleged in the Underlying Complaint because G&D failed to satisfy the conditions precedent of coverage by failing to give Auto-Owners timely and proper notice of the occurrences, claims, and suit as required by the conditions precedent of the CGL and Umbrella Policies.

71.    The Auto-Owners policies do not cover some or all of the claims made or damages related to the events alleged in the Underlying Complaint to the extent the damages are related to property damage to G&D's work, as excluded within the CGL and Umbrella Policies.

72.    The CGL Policies do not cover any of the claims made or damages related to the events alleged in the Underlying Complaint because all of the claims arise out of G&D's work applying EIFS, which is excluded by the CGL policies' Exterior Finishing System Exclusion.

73.    The Auto-Owners Policies do not cover any of the claims made or damages related to the events alleged in the Underlying Complaint because the

liability arises out of the assumption of liability in a contract and breach of contract, which are excluded by the CGL and Umbrella Policies.

74.    Any coverage which is available under the CGL Policies is limited by the Fungi and Bacteria sub-limits endorsements in the CGL Polices and excluded by the Fungi or Bacteria exclusion in the Umbrella Policy.

75.    To the extent Auto-Owners determines that its obligations (if any) are limited in any way due to the contents of the alleged written agreement between G&D and any other person or entity, Auto-Owners reserves its rights to limit or deny coverage and amend this Complaint accordingly.

76.    Auto-Owners relies upon and reserves its rights to rely upon other provisions of the CGL or Umbrella Policies or legal principles discovered during this action that also may limit or exclude coverage.

WHEREFORE, Plaintiff, Auto-Owners Insurance Company, prays:

(a)    That each and every Defendant be required to respond to the allegations set forth in this *Complaint for Declaratory Judgment*;

(b)    That this Court declare that Auto-Owners has: (*i*) no duty to cover, indemnify, or defend G&D for the Underlying Lawsuit; and (ii) no duty to defend or indemnify Metcon for the NP301 Lawsuit, or (iii)

no duty to indemnify any judgments or awards made against G&D

or Metcon in any civil action; and

(d)    For such other relief as this Court deems just and proper.

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing **Complaint for Declaratory Judgment**

has been prepared in 14 point size Times New Roman font, in accordance with

L.R. 5.1

Respectfully submitted,

**Bovis, Kyle, Burch & Medlin, LLC**

200 Ashford Center North          /s/ Kim M. Jackson
Suite 500                         Ga. State Bar No. 387420
Atlanta, Georgia  30338-2668
Tel:  (770) 391-9100              *Counsel for Plaintiff Auto-Owners Insurance*
Fax: (770) 668-0878               *Company*
kjackson@boviskyle.com